The opinion of the Court was delivered by
Bermudez, 0. J.
This defendant was indicted for murder and found guilty, without capital punishment.
From tile judgment and sentence condemning him to hard labor for, the. term of his natural life in the State Penitentiary, he has appealed.
The record contains a number of Bills of Exception, among which, one which includes the motion for a new trial, the evidence taken under it, and the action of the Judge, declining it.
The defendant complains that the District Judge who tried the ease and sentenced him, had no jurisdiction; that he erred in excluding certain testimony; that there was a variance between the indictment and the proof; that the instructions of the Court to the jury were, insufficient and contain serious errors of law detrimental to him and calculated to affect the verdict to liis prejudice.; that the Judge, illegally refused to charge the jury as requested, on matters material to the issued presented under the indictment; that opinions upon, and statements of, facts were expressed by the Judge during the trial and in the presence of the jury.
The motion for a new trial is based on numerous grounds for relief, one of which is to the effect, that from the lGth of June, 1881, up to the 27th of September following, the equal apportionment, by lot, of all the prosecutions before the Criminal District Court for the Parish of Orleans, including the present one, has not been made between the Judges of said Court, as is required by Article 130 of the Constitution of this State, and that, by reason of the want of such apportionment by lot, Section A of said Court, in which this case was tried aud said verdict rendered, is without jurisdiction.
On the trial of the motion, evidence was adduced, which establishes this ground. It consists of two entries on the minutes of each Section, made respectively by the Judge of Section A, on June lGth, 1831, and b,y the Judge of Section B, on August 15th, following, in both of which refere,nee is made to Section 7 of Act No. 98, of 1380. It is therein announced that there will he no session of Section A during the months of July and August, and none of Section B during those of September and October, and that during said period, the causes transmitted, or originating in said Court, Section A, will be allotted to Section B, and that similar cases in Section B, will bo allotted to Section A. Evidence-admitted shows that the present prosecution against the defendant, Gaetano Addotto, was in that manner apportioned to Section A. The *3 record proves that that tho prosecution was accordingly carried on in that Section before the Judge presiding over it, who rendered the judgment on the verdict and passed sentence on the prisoner.
Wo will first dispose of this radical objection, for it is only in the contingency that it lacks foundation, that the other means of defense can be investigated.
The Article of the Constitution referred to (130) provides, in relation to the Criminal District Court for the Parish of Orleans, which it creates, that:
“ All prosecutions instituted in said Court, shall be equally apportioned between said Judges, by lot. Each Judge or his successor shall have exclusive control over every cause falling' to him from its inception to final determination in said Court. In case of vacancy, or recusation, causes assigned shall be re-assigned under order of Court.
Section 7 of Act No. 98, of 1880, p. 126, mentioned in the entries on the minutes just above mentioned, reads:
“ Each of the Judges of the Criminal District Court for tho Parish of Orleans, may have an annual vacation of three months, during the time from the first of June to tho first of December, they regulating the time between themselves; provided, that the Court shall remain open during the entire year, and either one of the two Judges shall hold Court during the above mentioned period.”
In this condition of things several questions present themselves for solution.
First. What does the Constitution mean when it declares that all prosecutions instituted in said Court shall be equally apportioned between the Judges, by lot, and that each Judge shall have exclusive control over every cause falling to Mm.
Second. Whether the prosecution of the defendant was apportioned by lot to Section A, or the Judge thereof.
Third. Whether, if it was not thus apportioned, the failure to have done so can vitiate the judgment and sentence.
Fourth. Whether the objection of the defendant comes or not too late.
I.
The intent, purpose and meaning of tho Constitution are manifest. In the case of the State ex rol. Buisson vs. Lazarus, Judge of the Civil District Court, we were called upon to examine the same Article ■130, which, as to that Court, provides: that all causes filed in said Court shall be equally allotted and assigned among the Judges of that Court, in accordance with rules of Court to be adopted for that purpose. *4 We there said, that its object was to provide for an equal indiscriminate distribution, by allotment and assignment, of such cases among the Judges composing it.
'There exists no material disparity in point of substance, between the provisions of the Constitution as to the Civil District Court, and those concerning the Criminal District Court for the Parish of Orleans.
In both instances the Constitution requires an equal apportionment by lot
That means a device for indiscriminate equal distribution, or repartition among the Judges, by a resort to chance, or fortuity, and not otherwise.
This conclusion is the more irresistible, as the Constitution, in as many words, directs that each Judge or his successor shall have exclusive control over every case “falling ” to him, and as we laioio that it is the construction put upon it by the Judges of those two Courts in their practice in relation to it.
How could, indeed, a cause be apportioned by lot and fall to a Judge, unless by and after an allotment resulting from hazard ¶ Reference to Section 7 of Act 98, of 1880, does not, as contended, relieve the case from embarrassment. That Section does not provide that causes or prosecutions shall not be apportioned by lot. Indeed, how could it ¶
Its solitary purpose was to concede to each of the Judges of that Court the privilege of temporarily absenting himself, with executive leave to be obtained under another law, a faculty not imposed upon but left optional with them, to accept or not at their pleasure and due regard had to the condition of their respective dockets, they regulating the time between themselves; with Hie proviso that the Court would remain ojien during the entire year, and either of them would hold Court during the absence of the other.
This Section cannot be invoked as authority for the trial of prosecutions not previously apportioned by lot, to the Judge remaining on duty. If it were so viciously road, it would simply be unconstitutional, as in flagrant violation of well defined prohibitions in the organic law.
The argument has no weight, that cases which might be allotted to the absent Judge would then have to await his return, and that this construction would be in contravention of the other great constitutional provision, guaranteeing a speedy trial, and of the latter part of the same Article 130, which provides, that cases shall be re-assigned in certain eventualities or contingencies.
It is an argument aJ> incowvenienti. Had there been created only one Criminal Court with but one Judge, and had that Judge absented himself and no provision been made for his replacement during his absence, *5 the consequence would have been ex necessitate that, as long as it would have lasted, cases would not have been tried in that Court. Such a temporary absence, authorized by law and sanctioned by the Executive, upon whom rests the responsibility of granting it, could not be viewed as a denial of the right to speedy justice. As well could it be argued that this Court and the Supreme Court of the United States and all other Courts could have no term and should remain open all the year round, and that the Judges thereof shall never absent themselves.
The mere statement of the proposition carries its own refutation.
But whatever force there may be in the objection, it is powerless in presence of the omission to apportion by lot. It may well be that, had the apportionment by lot been made, the very case before us would have fallen to Section A, or the Judge thereof, and would have been tried as it was.
Neither docs this interpretation of the first portion of Article 130 clash with the last part of it. On the contrary, taken together as a whole, which they are, both portions harmoniously conduce to the same conclusion, which also proves destructive of another objection, namely: that one Judge only cannot apportion by lot.
The last sentence of the Article provides, that in case of vacancy or recusation, causes assigned shall be re-assigned, under order of Court. This language conveys clearly the idea, that under the direction of the remaining Judge, causes already assigned shall be assigned anew, in the same manner, that is, apportioned by lot. Hence, a Judge can apportion by lot.
II.
The evidence under the motion for a new trial establishes that the prosecution was not apportioned by lot to Section A. The very entry on the minutes of August 15th, does not even purport to dispose of it. The entry has not the appearance of an order, bait has that of a notice or announcement, that the Court in Section B will not sit during the months stated, and that the causes alluded to will be allotted to Section A, during said period. It does not say when or by whom the allotment will be made. The time of allotment is indefinite and the officer to make it is not designated. Was it the Judge presiding over Section B who was to make it, or the clerk, or the sheriff, or the Judge of Section A? It could have been apportioned by lot by either Judge, but surely not by either of the two other officers. It is not shown that it was allotted otherwise than by the course of things, under the entry *6 in tlie minutes of August 15th. The conclusion is, therefore, that the case, or prosecution was not apportioned by lot, as the Constitution demanded.
III.
The omission to have apportioned this cause or prosecution in the manner pointed out in Article 130, was a failure to observe an imperative provision of the Constitution, mandatory on the Judges of the Court, and which has been provided for the promotion of public good and of public order, and also for the benefit and in the interest of i>risoners at the bar of the Court.
It is unnecessary now to determine formally, whether the accused could or not have waived the advantage of that constitutional mandate in a criminal prosecution. It is certain that he has not done so before the object of the prosecution, the trial, had been consummated by judgment and his sentence to hard labor for life.
The absence of the apportionment by lot is such a grave irregularity as can vitiate the judgment and sentence, and can be taken advantage of by the defendant.
IV.
The accused was in time to object before judgment and sentence. His motion for a new trial was a proper proceeding. The objection might have come too late, after judgment and sentence, so as not to be reviewable on appeal, or even habeas coijms. 17 Wis. 521; 3 Head. 690; 122 Mass. 445; 123 Mass. 253; 28 A. 83.
In Virginia, it was held that, although the Court had jurisdiction, still an indictment found is void, if less than four justices were present.
It was there said:
“ From its nature, therefore, it is an objection, which is not waived by any pleading, and which is not cured by anything that . afterward transpired.”
Consequently, the defendant was permitted to take the objection, after trial, before a Court legally constituted. Bishop Crim. Proc. § 310.
The significant circumstances of objection urged before or after judgment, differentiate this case from that in State ex rel. Buisson vs. Lazarus, Judge, to which we have already referred.
While it is true that the prosecution was pending before the Court, it is no less so, that it had not been apportioned by lot to, and was not before, the Judge presiding over Section A of said Court, who, therefore, was incompetent to act in the same, by rendering judgment and passing sentence.
*7 From this standpoint we are relieved from tlie necessity of testing’ tlie otlier means of defense set up by the prisoner.
It is therefore ordered, adjudged and decreed, that the verdict in the case be set aside, that, the judgment thereon and appealed from be annulled, avoided and reversed; and it is further ordered, adjudged and decreed, that this case be remanded to the Criminal District Court for the Parish of Orleans, to be therein apportioned between the Judges of said Court, by lot, as the Constitution, Article 130, provides, and to be thereafter further proceeded with in the manner and form pointed out by law.